IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1835, IN THE TWEN-
TIETH YEAR OF THE STATE.

---

## VATTIER *v.* THE STATE.

A person was recognised by a justice to appear at the next term of the Circuit
Court, to answer to a charge of assault and battery with intent to murder,
and was at that term indicted for the offence. *Held,* that the defendant when
first *arraigned,* though it were at a subsequent term to that at which the in-
dictment was found, might plead in abatement that the grand jurors who
found the indictment had not been selected conformably to the statute.

ERROR to the *Dearborn* Circuit Court.

M'KINNEY, J.—*Vattier* was indicted and tried in the *Dear-
born* Circuit Court on a charge of an assault and battery with
intent to murder. He was found guilty, and judgment was
rendered against him. He has brought the case here, and al-
leges that the judgment should be reversed, on the ground of
error having been committed in overruling a demurrer which he
filed to the replication to his plea in abatement. The record
shows, that on being arraigned and required to plead to the
indictment, he pleaded in abatement to the array of the grand
jury, averring that the persons by whom the indictment was

*Monday,*
*November 30.*

Nov. Term, 1835.

VATTIER.
v.
THE STATE.

found were not legal grand jurors, not having been selected as required by law. The state replied, that the indictment should not be quashed, because the defendant was recognised to appear personally on the first day of the term of the *Dearborn* Circuit Court at which the indictment was found, then and there to answer the state on complaint of an assault, &c., with intent to murder, &c., it being the same complaint on which the indictment was founded,—at which time the said *Vattier* should have pleaded to the array of the grand jury and not afterwards.

Should the demurrer have been overruled? is the only question for our consideration.

It is contended by the state, that though at the term at which the indictment was found, the plaintiff in error, being recognised to answer the charge embraced in the indictment, could have pleaded in abatement to the array of the grand jury, yet having omitted to avail himself of this right at that term, he is thereby concluded and his plea consequently bad. This position, it is believed, cannot be maintained.

By the common law, with a view to the protection of innocence from unfounded prosecutions, instituted either by power or malevolence, the organization of a grand jury was an object of primary importance; and we discover from *English* legislation, that the authority of parliament was frequently interposed, in re-asserting the original purity of the institution, prescribing the duties of the sheriff, and the qualifications of individual jurors. *Hawkins*, in 2 Pleas of the Crown, 215, says, "That at common law, every indictment must be found by twelve men at the least, every one of which ought to be of the same county, and returned by the sheriff or other proper officer, without the nomination of any other person whatsoever, and ought to be," &c. He also says, "That any one under a prosecution for any crime whatsoever, may by the common law, before he is indicted, challenge any of the persons returned on the grand jury, as being outlawed, &c., or returned at the instance of a prosecutor, or not returned by the proper officer," &c.

Thus stood the common law, but neglect and disregard of its requirements gave occasion for the stat. 11, H. 4, c. 9, which prescribes by whom indictments shall be found, and declares that if an indictment be found in any point otherwise, it shall

be void. From the preamble to this statute we learn, that inquests were taken of persons named to the justices without due return by the sheriff, by whom many offenders were indicted, as well as others, not guilty, by conspiracy, abetment, &c., against the course of the common law. It declares all such indictments void, and requires that they should, for the future, be found as formerly, "without any denomination to the sheriff, &c. by any person, of the names which by him should be impannelled." Among several points resolved in the construction of this statute, *Hawkins*, in 2 Pl. Cr. p. 218, 219, gives the following; "That a person arraigned upon any indictment taken contrary to the purview of the statute, may plead such matter in avoidance of the indictment, and also plead over to the felony. That a person outlawed upon any such indictment without a trial, may also show in avoidance of the outlawry, that the indictment was taken contrary to the purview of the statute. But, that if a person who is tried upon such an indictment takes no such exception before his trial, it may be doubtful whether he may be allowed to take such exception afterwards, because he hath slipped the most proper time for it." He cites many authorities, all of which sustain his text. Among these is the case of *Withipole*, Cro. Car. 134, the first occurring under the statute. He pleaded that the foreman of the grand jury, by whom the indictment was found, had nominated himself to be of the jury, and fourteen others, &c. The plea was submitted to all the judges, and decided to be good.

Whether the plea before us would have been good at common law, is not thought material for inquiry, as its character must be settled by the statute. The statute prescribes the manner in which grand jurors shall be selected, and it must be conceded to be a mode which, if pursued, is as effectual as any that has been devised, to protect the citizen from unfounded prosecution, and to deprive the sheriff, if inclined, of the power and opportunity of acting corruptly. The board doing county business and the clerk of the Circuit Court, make the selection by lottery, and the sheriff summons those whose names are thus furnished. If this mode was not adopted, as alleged by the plea of *Vattier*, in selecting the jury by whom the indictment against him was found, and he availed himself of the exception on his arraignment, we cannot perceive a

Nov. Term, 1835.

VATTIER
v.
THE STATE.

VATTIER
v.
THE STATE.

sufficient reason for the rejection of the defence. If by the common law, being under a prosecution, he could challenge any of the grand jury to whom the charge against him was about to be submitted, we think that *on arraignment,* he should not be deprived of an exception, which would show that the indictors were not *"probi et legales homines"* (1). Under the statute of *Henry* we have noticed that *Hawkins* says, that if the exception be not made before trial, it is doubtful whether it can be allowed afterwards, because he hath slipped the most proper time for it. It is not necessary for us to examine this doubt, and the reasons upon which it may be founded, as the case before us is different from one in which that doubt could arise. The case of *Withipole* was before *Hawkins,* and of the validity of the defence before trial he could have no doubt.

The question then arises, should our statute receive the construction that was given to that of *Henry* 4, c. 9? This question is answered by recurring to the reasons which induced the adoption of the *English* statute. They are given in its preamble, and show that the common law was disregarded in taking inquests by persons named to the justices, without due return by the sheriff, of whom some were outlawed and some fled to sanctuary, and by whom innocent persons through conspiracy, &c., were indicted. This act was declaratory of the common law. In adverting to our statute, we have suggested the benefits that must result from a strict compliance with its provisions; and although with us, the reasons set out in the preamble to the *English* statute may not have existed, yet it is evident that the end proposed by each was the same,— the purity of the institution, and the protection of the citizen from unfounded prosecutions; consequently, each statute should receive the same construction. Adopting, therefore, the construction of the *English* statute as settled in the case of *Withipole,* we are brought to the conclusion, that *Vattier's* demurrer to the replication to his plea should have been sustained. This construction has in part, at least so far as the point involved required it, been given by this Court. *Jones* v. *The State,* 3 Blackf. 37.

*Per Curiam.*—The judgment is reversed and the verdict set aside. Cause remanded, &c.

*D. J. Caswell,* for the plaintiff.

*W. Herod,* for the state.

(1) The *arraignment* of a prisoner consists of three parts:—1st, calling him to the bar, and by holding up his hand, or otherwise making it appear he is the party indicted;—2ndly, reading the indictment to him distinctly in *English*, that he may fully understand the charge;—3rdly, demanding of him whether he be guilty or not guilty, and entering his plea; and then demanding of him how he will be tried; the common answer to which is by God and the country. 2 Hale's Hist. 219.—1 Toml. L. D. 95.